UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

622 THIRD AVENUE COMPANY, L.L.C.,

                    Plaintiff,

              -v.-

NATIONAL FIRE INSURANCE COMPANY OF
HARTFORD, TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, and HARLEYSVILLE
WORCESTER INSURANCE COMPANY,

                    Defendants,
                    Cross-Defendants, and
                    Cross-Claimants.

21 Civ. 6050 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:[1]

      622 Third Avenue Company, L.L.C. ("Plaintiff") brings this motion for partial summary judgment against Harleysville Worcester Insurance Company ("Defendant" or "Harleysville"),[2] seeking a declaration from the Court that Defendant has a duty to defend Plaintiff in an underlying personal injury action. Defendants and Cross-Claimants National Fire Insurance Company of Hartford ("Hartford") and Travelers Property Casualty Company of America ("Travelers") join in Plaintiff's motion, and seek a declaration that Defendant Harleysville is obligated to defend Plaintiff with them on a co-primary basis. For the reasons set forth in the remainder of this Opinion, the Court grants

---

[1]      The Clerk of Court is directed to amend the caption as set forth above.

[2]      Plaintiff's motion for partial summary judgment is limited to the issue of Defendant Harleysville Worcester Insurance Company's duty to defend Plaintiff. Accordingly, unless specifically noted, references to "Defendant" refer to Harleysville only. In sections of this Opinion discussing all three Defendants, the Court refers to the Defendants by name.

Plaintiff's motion and denies Cross-Claimants Traveler's and Hartford's motions, and finds only that Harleysville owes Plaintiff a duty to defend.

## BACKGROUND[3]

### A.    Factual Background

### 1.    The Harleysville Policy

Defendant issued a commercial insurance policy to its insured, Architectural Flooring Restoration ("AFR"), with an effective period of June 1, 2013, to June 1, 2014 (the "Policy").  (Pl. 56.1 ¶ 20; Def. 56.1 ¶ 20).  The Policy contains an endorsement naming additional insured persons and organizations (the "AI Endorsement").  (Pl. 56.1 ¶ 21; Def. 56.1 ¶ 21).  Plaintiff is listed as an additional insured under the AI Endorsement's schedule.  (*Id.*).  In relevant part, the AI Endorsement notes that it amends "Section II — Who Is An Insured" in the Policy "to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your [(AFR's)] ongoing operations performed for that insured(s) at the location

---

[3]    The facts alleged herein are drawn from Plaintiff's Local Rule 56.1 Statement ("Pl. 56.1" (Dkt. #54)), the Declaration of Matthew Kraus in support of Plaintiff's motion for partial summary judgment and attached exhibits ("Kraus Decl." (Dkt. #53)), Defendant's Counterstatement in response to Plaintiff's Local Rule 56.1 Statement ("Def. 56.1" (Dkt. #64)), and the Declaration of Michael P. Hess in opposition to Plaintiff's motion for partial summary judgment and attached exhibits ("Hess Decl." (Dkt. #62, 65)).  Citations to the parties' Rule 56.1 Statements incorporate by reference the documents cited therein.

For ease of reference, the Court refers to Plaintiff's memorandum of law in support of its motion for partial summary judgment as "Pl. Br." (Dkt. #55), Defendant's memorandum of law in opposition as "Def. Opp." (Dkt. #63), and Plaintiff's reply memorandum of law as "Pl. Reply" (Dkt. #66).  The Court additionally refers to Hartford's letter brief as "Hartford Br." (Dkt. #61).

designated above." (*Id.*).  The location referred to in the AI Endorsement is "McCann Erickson @ 622 Third Avenue, NYC[.]"  (*Id.*).[4]

### 2.    The Underlying Case

On September 26, 2016, Jason Vargas filed an action against Plaintiff and J.T. Magen & Company Inc. ("Magen"), assigned index number 158087/2016, in the Supreme Court of the State of New York, County of New York (the "622 Action").  (Pl. 56.1 ¶ 1; Def. 56.1 ¶ 1).  The complaint in the 622 Action (the "622 Complaint") alleges that Plaintiff owned the premises at 622 Third Avenue in New York City, and that the premises were undergoing construction and renovation work (the "Project") on or about December 7, 2013.  (Kraus Decl., Ex. 1 at ¶¶ 11, 14).  It further alleges that Plaintiff, as well as its agents and contractees, managed, supervised, or otherwise controlled the construction work taking place at 622 Third Avenue, and that Plaintiff owed a "non-delegable duty" to Vargas to manage and supervise the construction and keep the premises in a safe condition.  (*Id.* at ¶¶ 15-16).

Beyond these basic facts, the 622 Complaint details certain allegations regarding the relationships between and among Plaintiff and its contractors.  It alleges that Plaintiff entered into an agreement with or otherwise retained Magen, whereby Magen would serve as the general contractor on the Project at

---

[4]    The Court notes that the parties do not actually explain where the duty to defend is found in the Policy.  The Insuring Agreement in Defendant's Policy notes that "We [(Defendant)] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages."  (Kraus Decl., Ex. 17 at § I.1.a).  The parties do not contend that any exclusions apply, or that there are any disputes regarding interpretation of the coverage agreement.

622 Third Avenue. (Kraus Decl., Ex. 1 at ¶ 17). The 622 Complaint goes on to allege that Plaintiff or Magen entered into a contract with or otherwise retained AFR to perform certain construction or rehabilitation work on the Project as a subcontractor. (*Id.* at ¶¶ 26-27). And it avers that AFR hired JK Flooring ("JK") to serve as a subcontractor on the Project. (*Id.* at ¶ 28). The 622 Complaint alleges that during the relevant timeframe, Vargas was an employee of JK, and that he was working within the course and scope of his employment on the Project at 622 Third Avenue. (*Id.* at ¶ 29).

Finally, the 622 Complaint details the factual allegations regarding Vargas's injuries. In particular, the Complaint alleges that Vargas sustained "serious permanent bodily injuries while" working on the Project (Kraus Decl., Ex. 1 at ¶ 36), and that Plaintiff and its agents and employees "had a non-delegable duty to provide [Vargas] with a safe place to work" (*id.* at ¶ 37). The 622 Complaint further avers that Vargas sustained these injuries "while performing his labor and services for JK, a business entity other than the defendants, [Plaintiff] and [Magen] herein." (*Id.* at ¶ 39). And it claims that the injuries were sustained "due to the negligence, recklessness and/or carelessness of the named defendants, [Plaintiff] and [Magen], herein." (*Id.* at ¶ 40; *see also id.* at ¶ 48 (detailing additional claims of negligence against Plaintiff related to, *inter alia*, failing to provide safety equipment, failing to warn Vargas of a defective stairway, failing to inspect and repair a leaking sprinkler stand-pipe, and generally failing to properly maintain a stairway)).

Vargas filed a related action on April 14, 2017, against the Interpublic Group of Companies, Inc. ("Interpublic"), assigned index number 159977/2016, in the Supreme Court of the State of New York, County of New York.  (Pl. 56.1 ¶ 2; Def. 56.1 ¶ 2) (the "Interpublic Action").[5]  The Honorable Erika M. Edwards consolidated the related cases (the "Consolidated Action") on August 9, 2017.  (Pl. 56.1 ¶ 3; Def. 56.1 ¶ 3).  The complaint in the Interpublic Action (the "Interpublic Complaint") makes nearly identical allegations to those in the 622 Complaint, although Interpublic is alleged to be the owner, lessor, or lessee of the premises at 622 Third Avenue.  (Kraus Decl., Ex. 2 at ¶¶ 7-9).  For example, the Interpublic Complaint alleges that Interpublic managed and supervised the premises (*id.* at ¶ 11); that it owed Vargas a duty to keep the premises safe (*id.* at ¶ 12); that it entered into a relationship with Magen whereby Magen would serve as contractor on the Project (*id.* at ¶ 13); that it or Magen hired or retained AFR to serve as a sub-contractor, and AFR in turn hired JK (*id.* at ¶¶ 15-17); that Vargas worked for JK (*id.* at ¶ 18); and that Vargas was injured during his work for JK and Interpublic on the Project due to Interpublic's failure to maintain a safe premises and its negligence (*id.* at ¶¶ 24-27).

Following consolidation of the 622 Action and the Interpublic Action, Plaintiff filed a third-party complaint against AFR and JK on October 3, 2017.

---

[5]    In their Local Rule 56.1 statements, the parties note that the Interpublic Action was filed in April 2017.  However, the complaint in the Interpublic Action notes that it was "received" by the New York Supreme Court on November 29, 2016.  (*See* Kraus Decl., Ex. 2).

(Pl. 56.1 ¶ 10; Def. 56.1 ¶ 10; *see generally* Kraus Decl., Ex. 4). Plaintiff's third-party complaint alleges that AFR was performing work as a contractor or subcontractor on the Project, and that AFR's carelessness, recklessness, or negligence caused Vargas's injuries. (Pl. 56.1 ¶ 11; Def. 56.1 ¶ 11). The complaint seeks an award against AFR for contractual indemnification, common-law indemnification, and breach of contract. (Pl. 56.1 ¶ 13; Def. 56.1 ¶ 13). On December 1, 2017, Vargas filed a verified bill of particulars in response to a demand by Magen. (Pl. 56.1 ¶ 15; Def. 56.1 ¶ 15; *see generally* Kraus Decl., Ex. 6). As relevant here, Vargas's bill of particulars alleges that the accident occurred in a stairwell between the 20th and 22nd floors of 622 Third Avenue, and resulted from a leaking stand-pipe creating a puddle within the stairwell. (Pl. 56.1 ¶ 15; Def. 56.1 ¶ 15; Kraus Decl., Ex. 6 at ¶¶ 4-7). Similarly, on March 14, 2018, Plaintiff filed a verified bill of particulars in response to a demand by AFR. (Pl. 56.1 ¶ 17; Def. 56.1 ¶ 17; *see generally* Kraus Decl., Ex. 7). Plaintiff's bill of particulars alleges that AFR created the hazardous circumstance that led to Vargas's injuries, that AFR failed to take steps necessary to prevent the accident, and that AFR failed to give Vargas notice of the hazardous conditions, among other things. (Pl. 56.1 ¶ 17; Def. 56.1 ¶ 17; Kraus Decl., Ex. 7 at ¶ 2). On April 3, 2018, Interpublic filed a third-party complaint against Magen making similar allegations and seeking similar relief. (Pl. 56.1 ¶ 14; Def. 56.1 ¶ 14; *see generally* Kraus Decl., Ex. 5).

The parties in the underlying Consolidated Action have engaged in discovery and certain motion practice during the action's pendency. The

discovery in the underlying case and the admissions in motions and supporting papers bear on two issues relevant to the instant motion. The first issue concerns whether Magen served as a contractor, and whether AFR was hired to install flooring in connection with the Project in space leased by Interpublic. (*See, e.g.*, Hess Decl., Ex. E (Plaintiff's statement of material facts in support of cross-motion for summary judgment in underlying case) at ¶¶ 3 (noting Interpublic, through its affiliate McCann Erickson, contracted with Magen), 4 (noting AFR was contracted to install flooring in connection with the Project taking place in the space leased by Interpublic); *id.*, Ex. A (Plaintiff's affirmation in support of its cross-motion and in opposition to JK's summary judgment motion) at ¶¶ 3, 140 (similar admissions); *id.*, Ex. D (consent agreement between Plaintiff and Interpublic) at ¶¶ 10 ("Landlord shall have no responsibility for Tenant's [w]ork[.]"), 17 ("Nothing herein shall be construed as [] constituting Tenant as Landlord's agent[.]")). The second issue concerns whether Vargas was permitted to utilize the stairwell in conjunction with his work on the Project, or whether he was directed to use the stairs by the contractors and subcontractors, such that the stairs would be considered common areas and not part of the Project. (*See, e.g.*, *id.*, Ex. A at ¶¶ 31 (Magen supervisor directed Vargas to use the stairwell, which was off-limits), 74 (workers were directed to use a freight elevator, not the stairs), 130 (renovation work did not include the stairs); *id.*, Ex. E at ¶ 10 (Vargas's injury occurred while using the stairwell in violation of building rules); *id.*, Ex. B (lease between

Plaintiff and Interpublic) at § 1.05 ("Floors wholly occupied by Tenant shall not have any [c]ommon [b]uilding [a]reas, except for fire stairs and elevators.")).

### 3. Defendant's Coverage Position

On December 20, 2016, RLI Insurance Company tendered Plaintiff's defense and indemnity of the 622 Action to Defendant and AFR.  (Pl. 56.1 ¶ 22; Def. 56.1 ¶ 22; Kraus Decl., Ex. 13).  The tender sought additional insured coverage of Plaintiff from Defendant.  (Kraus Decl., Ex. 13 at 1).  On August 3, 2017, Defendant issued a coverage position letter in response to the tender, in which letter Defendant acknowledged Plaintiff's status as an additional insured under the Policy.  (Pl. 56.1 ¶ 23; Def. 56.1 ¶ 23; Kraus Decl., Ex. 15 at 2 ("[W]e will provide Additional Insured status to [Plaintiff] on an excess basis pursuant to the terms of the [P]olicy[.]")).  However, four years later, on December 16, 2021, Defendant seemingly reversed course.  (Pl. 56.1 ¶ 24; Def. 56.1 ¶ 24).  In Defendant's 2021 coverage letter, it noted that the AI Endorsement in the Policy "does not afford additional insured coverage to [Plaintiff] for the underlying Vargas claim because: [i] AFR was not performing any 'ongoing operations' 'for [Plaintiff] at the location'; and [ii] the accident did not occur within the McCann Erickson space in the building."  (Kraus Decl., Ex. 16 at 2).

### B. Procedural Background

Plaintiff initiated this action by filing its Complaint against all Defendants on July 14, 2021.  (Dkt. #1).  On September 23, 2021, Harleysville filed its answer to the Complaint, raising its affirmative defenses to Plaintiff's allegations and also bringing a cross-claim against Hartford and Travelers.

(Dkt. #24).  Travelers similarly answered the Complaint on September 23, 2021.  (Dkt. #28).  On September 24, 2021, Hartford answered the Complaint, and brought cross-claims against Travelers and Harleysville.  (Dkt. #30). Travelers then answered the cross-claims against it, and brought its own cross-claims against Hartford and Harleysville.  (Dkt. #31-32).  Hartford similarly filed an answer to the cross-claim against it brought by Harleysville.  (Dkt. #33).  Finally, Harleysville filed a reply to the cross-claims brought against it by Travelers (Dkt. #35), as did Hartford (Dkt. #36).

On November 9, 2021, the Court held an initial pretrial conference in this case.  (November 9, 2021 Minute Entry).  Following the conference, the Court entered a civil case management plan.  (Dkt. #39).  On March 2, 2022, Plaintiff submitted a pre-motion letter, contemplating a motion for summary judgment against all Defendants on the issues of their duties to defend and indemnify Plaintiff in the Consolidated Action.  (Dkt. #42).  On March 4, 2022, Travelers filed a response to Plaintiff's letter, arguing that a pre-motion conference was premature in light of the need to take additional discovery, and requesting an adjournment of the fact discovery deadline.  (Dkt. #43).  On March 10, 2022, having received no further responses to Plaintiff's letter, the Court denied Travelers's request for an extension of the fact discovery deadline, and noted that the parties should be prepared to discuss Plaintiff's contemplated motion for summary judgment at the March 15, 2022 post-fact-discovery conference.  (Dkt. #44).

On March 15, 2022, the Court held the post-fact-discovery conference in this case. (March 15, 2022 Minute Entry). At that conference, Plaintiff explained that it was not seeking summary judgment against Hartford at this time (Dkt. #59 at 5:1-21), but intended to seek summary judgment against Travelers and Harleysville (*id.* at 6:14-17). Hartford explained that it had cross-claims against Travelers and Harleysville regarding joint obligations to defend, and that it expected to join in any motion filed by Plaintiff. (*Id.* at 7:6-17). Travelers similarly noted that it owed a duty to defend to Plaintiff, and that it would join in motion practice on the issue of whether Harleysville also owes such duty, and whether any defense obligations were contributory with Travelers. (*Id.* at 12:4-19). Harleysville continued to contest whether it owed a duty to defend Plaintiff, and stated that motion practice was necessary to resolve the issue. (*Id.* at 14:2-21). At the conference, Travelers agreed to advise Plaintiff's counsel in writing regarding its position on whether it owed a duty to defend. (*Id.* at 18:4-16). The Court then set a briefing schedule for the motion for summary judgment. (March 15, 2022 Minute Entry).

On April 21, 2022, Plaintiff filed its motion for partial summary judgment and supporting papers, limited to the issue of Harleysville's duty to defend. (Dkt. #50, 53, 54, 55). On April 28, 2022, the Court granted Hartford an extension of time until May 6, 2022, to file a position letter in response to Plaintiff's motion. (Dkt. #57). On April 29, 2022, Travelers filed a letter, indicating that it was joining Plaintiff's motion against Harleysville, and that it was moving for summary judgment against Harleysville with respect to

10

Travelers's cross-claim for the reasons set forth in Plaintiff's motion.  (Dkt. #58).  On May 6, 2022, Harford filed a letter, indicating that it, too, joined in Plaintiff's motion for summary judgment, and that it also sought summary judgment against Harleysville on Hartford's cross-claim against it.  (Dkt. #61).  On June 7, 2022, Harleysville filed its opposition to Plaintiff's motion for partial summary judgment and supporting papers.  (Dkt. #62-65).  And on June 20, 2022, Plaintiff filed it reply memorandum of law in support of its motion.  (Dkt. #66).  Accordingly, Plaintiff's motion for partial summary judgment is fully briefed and ripe for the Court's resolution.

## DISCUSSION

### A.    Motions for Summary Judgment Under Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[6]  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson* v. *Liberty Lobby, Inc.*, 477

---

[6]    The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact. See Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination."). This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

U.S. 242, 248 (1986); *see also Jeffreys* v. *City of New York,* 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).

"It is the movant's burden to show that no genuine factual dispute exists" and a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc.* v. *1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If the movant has met its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" and, toward that end, "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations, quotation marks, and emphasis omitted). The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

## B.    Interpretation of Insurance Contracts

"Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." *Porco* v. *Lexington Ins. Co.*, 679 F. Supp. 2d 432, 435 (S.D.N.Y. 2009) (internal quotation marks omitted) (quoting *In re Estates of Covert*, 97 N.Y.2d 68, 76 (2001)). Under New York law, the interpretation of a contract "is a matter of law for the court to decide." *Int'l Multifoods Corp.* v. *Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (internal citation omitted); *see also Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) ("[T]he

12

initial interpretation of a contract is a matter of law for the court to decide."
(internal quotation marks and citation omitted)).

## C.     The Duty to Defend

Under New York law, "the duty of an insurer to defend its insured is
'exceedingly broad' and far more expansive than the duty to indemnify its
insured." *High Point Design, LLC* v. *LM Ins. Corp.*, 911 F.3d 89, 94-95 (2d Cir.
2018) (quoting *Cont'l Cas. Co.* v. *Rapid-Am. Corp.*, 80 N.Y.2d 640, 648 (1993));
*accord Regal Constr. Corp.* v. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 15
N.Y.3d 34, 37 (2010).  "[T]he insurer's duty to provide a defense is invoked
'whenever the allegations in a complaint against the insured fall within the
scope of the risks undertaken by the insurer, regardless of how false or
groundless those allegations might be.'"  *High Point Design, LLC*, 911 F.3d at 95
(quoting *Seaboard Sur. Co.* v. *Gillette Co.*, 64 N.Y.2d 304, 310 (1984)).  Thus,
"the general rule in determining whether an insurer has a duty to defend is to
compare the allegations of the complaint with the operative insurance policy."
*Int'l Bus. Machs. Corp.* v. *Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir.
2004).  An insurer must defend even if "facts outside the four corners of those
pleadings indicate that the claim may be meritless or not covered."  *Int'l Bus.
Machs. Corp.* v. *Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 427 (2d Cir. 2002)
(quoting *Fitzpatrick* v. *Am. Honda Motor Co.*, 78 N.Y.2d 61, 63 (1991)).  "If the
allegations of the complaint are even potentially within the language of the
insurance policy, there is a duty to defend."  *High Point Design, LLC*, 911 F.3d

at 95 (quoting *Town of Massena* v. *Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002)).

However, "[t]he insurer's duty to defend is ... not an interminable one, and will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy." *Sturges Mfg. Co.* v. *Utica Mut. Ins. Co.*, 37 N.Y.2d 69, 74 (1975). In other words, where an insurer's duty to defend turns on an unresolved factual dispute, "the duty to defend lasts only until the factual ambiguity is resolved in favor of the insurer." *Hugo Boss Fashions, Inc.* v. *Fed. Ins. Co.*, 252 F.3d 608, 622 (2d Cir. 2001); *see also Stein* v. *N. Assurance Co. of Am.*, No. 09 Civ. 1029 (TCP) (AKT), 2011 WL 13305251, at *11 (E.D.N.Y. Jan. 25, 2011) ("[P]rior to the time an insurer demands and receives its bill of particulars and determines that it may properly disclaim coverage, the duty to defend remains with the insurer." (citation omitted)); *Avondale Indus., Inc.* v. *Travelers Indem. Co.*, 774 F. Supp. 1416, 1425 (S.D.N.Y. 1991) (The "duty to defend continues until judicial determination, either in [the] underlying action or in [the] coverage action, of [the] issue relevant to coverage." (citing *Colon* v. *Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 10 (1985))).

The question of when facts extrinsic to a complaint may either trigger a duty to defend or terminate that duty at a subsequent date remains somewhat unclear under New York law. *See Stein* v. *N. Assur. Co. of Am.*, 617 F. App'x 28, 31 n.4 (2d Cir. 2015) (summary order) ("We have previously recognized that New York law is 'unclear' regarding the circumstances in which a court may consider extrinsic evidence in making coverage determinations." (citation

14

omitted)); *Int'l Bus. Machs. Corp.*, 303 F.3d at 426 ("[T]here is no consistent rule from New York's lower courts [as to] whether New York law allows reference to extrinsic evidence in determining the duty to defend.").  Still, the Second Circuit has suggested that extrinsic evidence may terminate the duty to defend in certain circumstances, including when extrinsic evidence unrelated to the underlying merits unambiguously shows that there is no possibility of coverage.  *See Int'l Bus. Machs.*, 363 F.3d at 148 ("[T]he general rule in determining whether an insurer has a duty to defend is to compare the allegations of the complaint with the operative insurance policy.  A narrow, but widely recognized exception to the rule allows an insurer to refuse or withdraw a defense if evidence extrinsic to those sources and 'unrelated to the merits of plaintiff's action[,] plainly take the case outside the policy coverage.'" (quoting ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES, § 4:4 293-94 (West 2001))).

"For this exception to apply, 'the extrinsic evidence relied upon may not overlap with the facts at issue in the underlying case.'" *Travelers Indem. Co.* v. *Harleysville Ins. Co. of N.Y.*, No. 18 Civ. 600 (PGG), 2020 WL 1304085, at *4 (S.D.N.Y. Mar. 19, 2020) (quoting *U.S. Underwriters Ins. Co.* v. *Image By J & K, LLC*, 335 F. Supp. 3d 321, 331 (E.D.N.Y. 2018))*; accord City of New York* v. *Liberty Mut. Ins. Co.*, No. 15 Civ. 8220 (AJN), 2017 WL 4386363, at *15 (S.D.N.Y. Sept. 28, 2017) ("[I]t is a settled rule [under New York law] that extrinsic evidence can[not] be used to defeat the duty to defend ... [unless it is] unrelated to the merits of [the underlying] plaintiff's action." (alterations in original) (internal quotation marks omitted)).  Even when a court is permitted

15

to consider such extrinsic evidence, an "insurer may deny its insured a defense 'only if it could be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy.'" *High Point Design, LLC*, 911 F.3d at 95 (quoting *Servidone Constr. Corp.* v. *Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985)).

In line with this rule, an insurer generally may not use the admissions of an insured to defeat a duty to defend. *See Continental Casualty Co.* v. *JBS Constr. Mgmt., Inc.*, No. 09 Civ. 6697 (JSR), 2010 WL 2834898, at *5 (S.D.N.Y. July 1, 2010) (holding that insurer has a duty to defend its insured despite the insured's admissions in verified answers to the plaintiffs' complaint that would remove the insured from the purview of the insurer's coverage); *Kincaid* v. *Simmons*, 414 N.Y.S.2d 407, 410 (4th Dep't 1979) (finding duty to defend despite insured's admission that his work was completed when incident occurred that gave rise to plaintiff's lawsuit naming insured); 1 INSURANCE CLAIMS AND DISPUTES § 4:4. INSURER'S REFUSAL TO DEFEND BASED ON EXISTENCE OF EXTRINSIC FACTS (6th ed.) ("Insurers, as a general rule, are not allowed to refuse to defend on the grounds that they are in possession of information establishing that the allegations in the complaint giving rise to coverage are untrue. This is the rule even if the information was obtained from the insured.").

D.     **Analysis**

The Court pauses for a moment to distill what is really at issue in this motion for partial summary judgment.  Defendant does not argue that Plaintiff is not listed as an additional insured under the Policy.  (Def. Opp. 9).  It does not argue that the allegations in the 622 Complaint unambiguously fall outside of the language of the Policy.  (*See id.* at 3 ("It should be noted that those allegations [in the underlying complaint] were always ambiguous[.]")).  *See High Point Design, LLC*, 911 F.3d at 95 ("If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend.").  Nor does it argue that the various bills of particulars defeat the duty to defend.  Instead, the parties disagree over whether the Court may consider facts extrinsic to the underlying 622 Complaint — namely, affirmations and memoranda of law in support of motion practice in the underlying action, as well as discovery produced in the underlying action — when assessing whether Defendant owes a duty to defend.  (*See* Pl. Br. 10 (solely discussing the 622 Complaint); Def. Opp. 4-8 (marshaling evidence produced through discovery in the 622 Action — including leases, consent agreements, and contracts — and supporting papers for motions in the underlying case); Pl. Reply 3-5 (arguing that the Court must look only to the 622 Complaint to determine whether a duty to defend exists)).  In relying on evidence extrinsic to the underlying complaint, Defendant takes the same position in its opposition to summary judgment as it did in its 2021 coverage position letter: that Plaintiff is not an additional insured and is owed no duty to defend because (i) "AFR was not

17

performing any work for [Plaintiff]" and (ii) "the accident did not occur within
the McCann Erickson space[.]"  (Def. Opp. 2).

### 1.     The Allegations in the Underlying Complaint Triggered the Duty to Defend

The Court begins its analysis with determining whether the 622
Complaint — the complaint that implicates Plaintiff — obligates Defendant to
defend Plaintiff.  *See, e.g.*, *High Point Design, LLC*, 911 F.3d at 95 ("[C]ourts are
to compare the allegations of the complaint to the terms of the policy." (quoting
*Century 21, Inc.* v. *Diamond State Ins. Co.*, 442 F.3d 79, 83 (2d Cir. 2006)
(internal quotation marks omitted))).  Defendant appears to concede, or at a
minimum does not contest, that the allegations in the underlying 622
Complaint triggered the duty to defend in the Policy without consideration of
evidence extrinsic to the complaint.  (*See* Def. Opp. 3).  Plaintiff argues that a
straightforward application of the so-called "four corners" rule fleshed out
above shows that Plaintiff qualifies as an additional insured under the Policy,
and thus Defendant owes Plaintiff a duty to defend.  (*See, e.g.*, Pl. Br. 9-10).

The first prerequisite for Plaintiff to qualify as an additional insured
under the Policy is that the "liability aris[es] out of your [(AFR's)] ongoing
operations performed for [Plaintiff][.]"  (Pl. 56.1 ¶ 21; Def. 56.1 ¶ 21).  The 622
Complaint alleges that Plaintiff hired Magen to serve as a contractor on the
Project (Kraus Decl., Ex. 1 at ¶ 17), that Plaintiff or Magen hired AFR — the
named insured — as a subcontractor (*id.* at ¶ 27), that AFR hired JK (*id.* at
¶ 28), and that Vargas was working for JK in conjunction with the Project at
the time of the accident (*id.* at ¶ 29).  It further alleges that "on or about

December 7, 2013, plaintiff, Jason Vargas, was directed to work and perform his skill, labor and services … by an agent, servant, employee and/or assign of the defendants, [Plaintiff] and [Magen]." (*Id.* at ¶ 45).

The phrases "ongoing operations," "arising out of," and "performed for" have been interpreted quite broadly under New York law. *See, e.g.*, *Wausau Underwriters Ins. Co.* v. *Cincinnati Ins. Co.*, 198 F. App'x 148, 150 (2d Cir. 2006) (summary order) (concluding that slip-and-fall action arose out of "ongoing operations" of snow removal contractor despite the fact that injury occurred after contractor had plowed and salted the areas). As such, courts within this Circuit and New York have found that an "arising out of" or materially similar condition is satisfied where an insured's employee (or an insured's subcontractor's employee) is injured during the course of his work for an additional insured. *See, e.g.*, *Wausau Underwriters Ins.* Co. v. *Old Republic Gen. Ins. Co.*, 122 F. Supp. 3d 44, 51 (S.D.N.Y. 2015) (finding that property owner was an additional insured where contractor "was responsible for hiring subcontractors for the … project" and "[underlying plaintiff] was on the premises as a representative of [subcontractor], a potential subcontractor, in connection with [subcontractor's] bid to work on the project"); *Structure Tone, Inc.* v. *Component Assembly Sys.*, 713 N.Y.S.2d 161, 162 (1st Dep't 2000) (finding, under materially similar language, that "[t]he sole focus in determining whether coverage under the additional insured endorsement was triggered, thus obligating [insurer] to indemnify [contractor], is whether the accident arose out of [subcontractor's] work or its subcontractor['s] work

19

performed by them for [contractor] at the construction site"); *BP Air Conditioning Corp.* v. *One Beacon Ins. Grp.*, 8 N.Y.3d 708, 715 (2007) (finding that subcontractor was additional insured under contractor's policy where underlying complaint alleged that subcontractor was engaged in work at time of accident, contractor breached its duty to keep the workplace safe, and breach caused subcontractor's injuries); *Liberty Mut. Ins. Co.* v. *Zurich Am. Ins. Co.*, No. 11 Civ. 9357 (ALC) (KNF), 2014 WL 1303595, at *3 (S.D.N.Y. Mar. 28, 2014) ("There is no dispute that [named insured's employee] was injured in his capacity as a [named insured] employee while performing operations for the [additional insured entities].  So unless the exclusion to coverage applies, [named insured's employee's] injury is covered under the [p]olicy.").  Based on the chain of management alleged in the 622 Complaint, as well as Vargas's allegations that Magen or Plaintiff directed the work on their behalf and that the injuries took place during the scope of Vargas's work for AFR, the Policy's language that the liability "aris[es] out of [AFR's] ongoing operations performed for [Plaintiff]" is satisfied when comparing the allegations in the underlying 622 Complaint to the Policy.

The next prerequisite to coverage is that Vargas's alleged injury arose out of these ongoing operations performed for Plaintiff "at the location designated above [McCann Erickson @ 622 Third Avenue, NYC]."  Although it will address Defendant's attempt to use extrinsic evidence to defeat its duty to defend later in this Opinion, the Court now addresses Defendant's argument that because Vargas's injury did not take place directly in the McCann Erickson space, the

accident cannot be considered as arising out of ongoing operations at "McCann Erikson @ 622 Third Avenue, NYC." (*See* Def. Opp. 3 ("[T]he staircase was not part of the McCann Erickson space nor was it within the area where the renovation project was taking place.")). The Court finds that Defendant's reading of this provision, particularly in light of the standards for assessing the duty to defend, to be far too cramped.

The Policy does not state that any liability must stem solely from AFR's operations taking place within the confines of the Project site. Instead, it states merely that liability must "arise out of [AFR's] ongoing operations at the location" noted in the Policy. Again, "arising out of" language in insurance policies is interpreted broadly under New York law, and focuses "not on the precise cause of the accident but on the general nature of the operation in the course of which the injury was sustained[.]" *Hunter Roberts Const. Grp., LLC* v. *Arch Ins. Co.*, 904 N.Y.S.2d 52, 56 (1st Dep't 2010); *see also Regal Const. Corp.* v. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34, 38 (2010) ("We have interpreted the phrase 'arising out of' in an additional insured clause to mean 'originating from, incident to, or having connection with[.]'" (internal citation omitted)).

Thus, where an insurance policy utilizes "arising out of" or materially similar language, courts applying New York law have found that it is not necessary for the accident to take place at the covered location, but instead that the operations at the covered location have a connection with the accident and its situs. *See, e.g., Turner Const. Co.* v. *Pace Plumbing Corp.*, 748 N.Y.S.2d

21

356, 357 (1st Dep't 2002) ("[T]he relevant and previously unadjudicated issues in determining whether [additional insured] was entitled to a defense and indemnification under the subject policy's additional insured endorsement were whether the injured employee's use of bathroom facilities located at the job site was a necessary and unavoidable activity that arose in the course of the construction project and whether the employee's injury therefore arose in connection with the execution of [subcontractor's] work for [contractor].");
*Wausau Underwriters Ins. Co.*, 122 F. Supp. 3d at 51 (finding that underlying complaint "alleges a clear connection between [plaintiff's] injury and the risk for which the additional insured endorsements in the [insurance] policy were intended," where underlying plaintiff tripped and fell entering a bathroom in connection with work on the project); *cf. Worth Const. Co.* v. *Admiral Ins. Co.*, 10 N.Y.3d 411, 416 (2008) ("The allegation in the complaint that the stairway was negligently constructed was the only basis for asserting any significant connection between [named insured's] work and the accident.  Once [contractor] admitted that its claims of negligence against [named insured] were without factual merit, it conceded that the staircase was merely the situs of the accident.").

For example, courts applying New York law have frequently found that an injury taking place on a sidewalk still triggers the duty to defend an additional insured if the sidewalk is used to access the covered location.  *See, e.g.*, *Kookmin Best Ins. Co., Ltd.* v. *Foremost Ins. Co.*, No. 18 Civ. 782 (PAE), 2019 WL 1059973, at *6 (S.D.N.Y. Mar. 5, 2019) ("Applying these principles, if

[underlying plaintiff's] alleged injuries occurred on a part of the sidewalk that is necessarily used to access [the covered] premises, the site of the injury would be deemed part of the premises covered by the [insurance] [p]olicy." (collecting cases)).  The additional insured language and duty to defend are satisfied even if the allegations in the underlying complaint are ambiguous on this point. Indeed, in *Kookmin*, the underlying plaintiff merely alleged that "at the [premises] known a[s] 665 Pelham Parkway North ... [underlying plaintiff] was caused to be injured."  *Id.*  The court found that this allegation satisfied the covered location provision of the additional insured provision: that the liability is "caused, in whole or in part, by ... acts or omissions ... in the performance of [named insured's] ongoing operations for [additional insured] at ... 665 Pelham Parkway North Ste. 2."  *Id.* at *5-6.  This is because the underlying plaintiff's allegation was ambiguous as to whether he suffered his injury entirely off of the covered premises.  *Id.* at *6 ("Put differently, [insurer] must demonstrate that the only reasonable interpretation of [underlying plaintiff's] allegations is that [he] suffered his injuries off [the covered] premises.  Because [underlying plaintiff's] complaint leaves open the reasonable possibility that he suffered his alleged injuries in a location necessarily used to access [the covered] premises — and, therefore, considered part of the premises — [insurer] has failed to carry that burden." (citing *All State Interior Demolition Inc.* v. *Scottsdale Ins. Co.*, 92 N.Y.S.3d 256, 258 (1st Dep't 2019))).

The 622 Complaint alleges that all of the relevant events, including the Project and the accident, took place at "certain premises known as 622 Third

Avenue, located in the County of New York, City and State of New York."
(Kraus Decl., Ex. 1 at ¶ 11; *see also, e.g.*, *id.* at ¶¶ 25 (alleging that the work
was taking place at the premises), 48 (alleging that staircase at which the
accident took place is located at the premises)).[7]  The location noted in the
Policy refers to a specific area within "622 Third Avenue, NYC" — the offices of
McCann Erickson — and thus Vargas's allegations appear to implicate the
Policy's additional insured language.  Vargas's verified bill of particulars in the
underlying action clarifies that the accident occurred when Vargas "lawfully
entered to the 22nd floor stairwell to walk down to the 20th [floor]" (*id.*, Ex. 6 at
¶ 5), the floor where Defendant concedes the "McCann Erickson" space is
located within 622 Third Avenue (Def. Opp. 2).  Beyond this, the allegations
lack specificity.  Vargas's allegations regarding the location at which the
accident took place, and its relationship to AFR's "ongoing operations" at the
"location designated" in the Policy, are at worst ambiguous, which does not
relieve Defendant of its duty to defend.  This is particularly so because the
underlying complaint in the 622 Action alleges that the accident occurred while

---

[7]     The parties do not argue that the Policy itself defines where, specifically, "McCann
Erickson" is within the 622 Third Avenue complex.  Instead, the parties appear to agree
that the stairwell in which the accident took place is at least close to the McCann
Erickson space.  (*See, e.g.*, Pl. Reply 5 ("There is not a single allegation in the complaint
that places the accident away from the Project.  Given that the complaint places the
accident on the Project, the entire premise of [Defendant's] argument must be
rejected."); Def. Opp. 2 ("Vargas['s] accident occurred within a fire staircase on the 22nd
floor of the building, while the work that Vargas was performing at the time of the
accident was confined entirely to the 20th floor.")).  The parties also appear to agree (or
at a minimum do not contest) that the relevant Project discussed in the 622 Complaint
was taking place in the McCann Erickson space at 622 Third Avenue.  (*See, e.g.*, Def.
Opp. 2; Pl. Br. 10).  For the purposes of this motion for partial summary judgment, the
Court thus concludes that the only disputed issue relating to the interpretation of the
"location" in the Policy concerns whether the stairwell where the accident occurred was
part of the actual construction site.

Vargas "lawfully perform[ed] his skill and labor at the construction … site at the aforesaid premises known as 622 Third Avenue[.]"  (Kraus Decl., Ex. 1 at ¶ 36).

As such, the allegations in the 622 Complaint triggered the duty to defend.  The allegations in the 622 Complaint allege that Vargas was working for JK, a subcontractor of Defendant's named insured, while AFR was working at the behest and direction of either Plaintiff or Magen.  Further, because the 622 Complaint is at worst ambiguous on the relationship between the stairwell where Vargas's injury took place and AFR's ongoing operations at the covered location, the additional insured language is satisfied under the standards applicable to the duty to defend analysis.

> ## 2.   Defendant's Proffered Extrinsic Evidence Is Bound Up With the Merits of the Underlying Action, and Cannot Be Used to Defeat Its Duty to Defend[8]

As discussed, the parties disagree as to whether the Court may consider evidence extrinsic to the 622 Complaint when assessing the duty to defend. Plaintiff vociferously argues that the Court must look only to the underlying

---

[8]   The Court pauses here to note that Defendant has not argued that, even if it initially had a duty to defend Plaintiff, such duty has terminated based on discovery of additional information extrinsic to the 622 Complaint.  Instead, Defendant's argument appears to be that it *never* owed Plaintiff a duty to defend, despite the allegations in the underlying complaint.  It is true that the duty to defend exists only "until it is determined with certainty that the policy does not provide coverage."  *Hugo Boss Fashions, Inc.* v. *Fed. Ins. Co.*, 252 F.3d 608, 622 (2d Cir. 2001).  But insurers are not permitted to claim that evidence obtained via discovery in an underlying case defeats the duty to defend from the get-go; rather, they must argue that underlying discovery has clarified that the insured faces no prospect of liability or coverage for indemnity, and that the duty has *terminated.  See, e.g., CGS Indus., Inc.* v. *Charter Oak Fire Ins. Co.*, 720 F.3d 71, 82 (2d Cir. 2013) (noting that insurer "cited … discovery responses, incorrectly, as a reason why it had never had a duty to defend at all" and that insurer waived argument that duty terminated because it did not raise the argument below).

622 Complaint, and compare the four corners of that document with the language of the Policy. (Pl. Reply 3-5). Defendant insists that extrinsic evidence proves that Plaintiff does not qualify as an additional insured, and that the Court may take such evidence into account. (Def. Opp. 2). As is clear from the Court's recitation of the law in this area, both parties overstate their positions. Nonetheless, because the evidence Defendant seeks to use to defeat the duty to defend is bound up with the merits of the underlying case, it may not be used to defeat its duty to defend Plaintiff.

The Court is guided by several recent cases from sister courts in this District applying the rule against using evidence going to the merits of the underlying case to defeat the duty to defend. In *Charter Oak Fire Insurance Company* v. *New York Marine and General Insurance Company*, a property owner was listed as an additional insured under the subject policy issued to a tenant of the property. 559 F. Supp. 3d 244, 248 (S.D.N.Y. 2021). A plaintiff in an underlying personal injury case alleged that he tripped and fell on a tree well guard located on the sidewalk in front of the leased space, and sued both the tenant and property owner, alleging that both had a duty to maintain the premises in a safe condition, and that the failure to do so led to his injuries. *Id.* The tenant's insurer denied the property owner additional insured coverage, and refused to defend or indemnify the owner. *Id.* In order to escape the duty to defend, the tenant's insurer appealed principally to evidence extrinsic to the underlying complaint, including a lease that did not purport to oblige the tenant to maintain the tree well guard, as well as testimony from one

26

of the property owner's representatives in which the representative stated that the tenant was not able to perform maintenance on the tree well guard. *Id.* at 251. The court rejected the tenant's insurer's use of such evidence, finding that "[t]hese types of extrinsic evidence go to the merits of the underlying claims … and thus cannot be used to avoid the duty to defend." *Id.* at 251-52 (citing *Int'l Bus. Machs. Corp.*, 363 F.3d at 148); *see also id.* at 252-53 ("[Underlying plaintiff's] allegations are potentially within the language of the additional insured provision of the [subject policy] because [he] says [tenant] and [owner] were required to maintain the tree well guard in a safe condition, and they did not.").

So too in *Travelers Indemnity Company* v. *Harleysville Insurance Company of New York*, No. 18 Civ. 600 (PGG), 2020 WL 1304085 (S.D.N.Y. Mar. 19, 2020). There, a general contractor was listed as an additional insured on its subcontractor's insurance policy in conjunction with the subcontractor's installation of fencing. *Id.* at *1. A plaintiff in an underlying case was allegedly struck by a car while walking near the construction site, and brought suit against the contractor and subcontractor, claiming that the subcontractor obstructed roadway visibility by negligently installing the fencing, and that both the contractor and subcontractor were responsible for the installation. *Id.* at *2. The subcontractor's insurer refused to defend or indemnify the contractor, and argued that the accident did not arise from the subcontractor's work. *Id.* at *3. To substantiate this argument, the subcontractor's insurer relied on facts outside the pleadings, including a police report, the driver's

27

deposition testimony, and an expert's affidavit, all of which evidence suggested that the accident was caused by the driver's view being obstructed by a large SUV. *Id.* at *5. The court rejected the use of this evidence, finding that it went "directly to the merits of [underlying plaintiff's] claims against [the subcontractor] and, by extension, his claims against [the other underlying defendants, including the contractor] (to the extent that [underlying plaintiff] seeks to hold these entities liable for [the subcontractor's] conduct). Extrinsic evidence of this sort cannot be relied on to defeat a duty to defend claim." *Id.*

On the other hand, "where the factual issue central to the insurance coverage dispute is collateral to the underlying action, so that it is irrelevant to the underlying action and will not be addressed there, the court which has jurisdiction over the declaratory coverage action may make the determination." *Avondale Indus., Inc.*, 774 F. Supp. at 1425. Thus, in *Philadelphia Indemnity Insurance Company* v. *Streb, Inc.*, this Court found that extrinsic evidence showing that the underlying plaintiff was using a trampoline while she sustained her alleged injuries could be considered, as the underlying complaint did not mention a trampoline and the mere fact of its use was irrelevant to the underlying claims. 487 F. Supp. 3d 174, 187 (S.D.N.Y. 2020). Because the insurer's policy excluded coverage for claims arising out of the use of trampolines, and "it is undisputed that [underlying plaintiff] was using a trampoline at the time of the [i]njury" and the insured did "not claim that it is a disputed fact in the underlying suit[,]" the insurer could use the fact to conclusively show that the insured would not be covered. *Id.*

28

These cases make sense.  As a sister court noted, a court's refusal to excuse an insurer's duty to defend based on extrinsic evidence bound up with the merits of the underlying case "follows from the basic structure of the duty to defend....  If an insurer could defeat its duty by proving, in a collateral action, the existence of a fact that is relevant to the merits of the underlying suit, it would follow that the insurer could subvert its obligation to defend against meritless suits." *Liberty Mut. Ins. Co.*, 2017 WL 4386363, at *15; *see also id.* at *16 (refusing to consider extrinsic evidence because it implicated "questions relevant to the merits of the underlying actions" and "[a] simple examination of the filings in [the underlying actions] makes this conclusion evident").

Here, the extrinsic evidence that Defendant seeks to use to defeat its duty to defend is undoubtedly related to the merits of the underlying case, and thus falls within the above line of cases finding that insurers may not use such evidence to defeat a duty to defend.  Again, Defendant argues that Plaintiff does not qualify as an additional insured and is owed no duty to defend for two reasons: (i) AFR — the named insured — was not working for Plaintiff but instead Interpublic, and thus there is no "liability arising out of [AFR's] ongoing operations performed *for*" Plaintiff (Def. Opp. 1); and (ii) the operations were not "performed ... at the location designated [*i.e.*, McCann Erickson @ 622 Third Avenue, NY]" (*id.* at 2).  To substantiate this first argument — that AFR was not working for Plaintiff — Defendant points the Court to Plaintiff's motion papers in the underlying action (*id.* at 4-6), consent agreements between Plaintiff and

29

Interpublic (*id.* at 7), a construction agreement between McCann Erickson (an Interpublic subsidiary) and Magen (*id.*), and a work order and invoice from AFR to JK (*id.* at 7-8), all of which Defendant claims show that AFR was not performing work for Plaintiff.  To substantiate this latter argument, Defendant puts forth a lease between Plaintiff and Interpublic (*id.* at 6-7) and again looks to Plaintiff's motion papers in the underlying action (*id.* at 4-6), which evidence Defendant claims shows that the accident took place outside of the McCann Erickson space in an off-limits stairwell that was a common building area.

As to Defendant's first point, for whom AFR was performing work is directly relevant to the underlying merits, given that the 622 Complaint explicitly alleges that Plaintiff hired Magen (Kraus Decl., Ex. 1 at ¶ 17), either Plaintiff or Magen hired AFR (*id.* at ¶¶ 26-27), and AFR hired JK, the entity for which Vargas worked (*id.* at ¶ 28).  The 622 Complaint alleges that Plaintiff and Magen managed and supervised the Project and the premises, and owed concomitant duties to maintain 622 Third Avenue in a safe condition; as a result of their alleged failure to do so, "Vargas [] was caused to sustain serious personal and bodily injuries … while *performing* his labor and services *for* [Magen], a business entity other than the defendants, [Plaintiff] and JK herein." (*Id.* at ¶ 39 (emphases added); *see also, e.g.*, *id.* at ¶ 30 (alleging that Plaintiff "directed, controlled, managed, maintained, supervised, inspected and/or repaired, the construction/demolition and/or renovation work being performed")).  Defendant's proffered evidence is meant to directly refute these allegations in the 622 Complaint, and to show that it is impossible that AFR

30

(and by implication Vargas) was working for Plaintiff.  Insofar as these issues
bear on Plaintiff's and other defendants' potential liability in the underlying
action, they are inherently bound up with the merits of the underlying case,
and Defendant cannot use such extrinsic evidence.  *See, e.g.*, *Charter Oak*, 559
F. Supp. 3d at 251-52 (lease showing that named insured was not required to
maintain tree well guard that caused underlying plaintiff's injuries could not be
used to defeat duty to defend); *Houston Cas. Co.* v. *Hudson Excess Ins. Co.*,
No. 21 Civ. 3182 (JSR), 2021 WL 4555526, at *4 (S.D.N.Y. Oct. 4, 2021)
(rejecting use of extrinsic evidence showing named insured never even
performed work for the additional insured at the covered location, as such
evidence "goes directly to the issues" in the underlying case).  Indeed, as is
evident from Defendant's reliance on Plaintiff's motion papers in the underlying
action, the underlying parties are litigating these issues, and this Court is not
in a position to resolve the disputes.  (*See, e.g.*, Hess Decl., Ex. A, E, F, G, H, I,
J (Plaintiff's motion papers in the underlying case)).  *See also Liberty Mut. Ins.
Co.*, 2017 WL 4386363, at *16 (confirming fact that extrinsic evidence was
related to underlying merits by looking at filings in underlying action).

As to Defendant's second point, the Court's analysis is the same.  The
underlying 622 Complaint explicitly states that Vargas was injured "while
lawfully performing his skill and labor ... at the aforesaid premises known as
622 Third Avenue[.]"  (Kraus Decl., Ex. 1 at ¶ 36).  By implication, Vargas
alleges that his use of the stairwell was tied to his work at the Project, and that
he was permitted to use the stairwell.  The 622 Complaint only mentions the

staircase in the context of alleging that it was defective or otherwise a hazard. (*See id.* at ¶ 48).  And Vargas's verified bill of particulars only clarifies that the stairwell where the accident allegedly occurred is located between the 22nd and 20th floors of 622 Third Avenue.  (Kraus Decl., Ex. 6 at ¶ 4).  Defendant argues that the extrinsic evidence it puts before the Court shows that Vargas was not working at the covered location when he sustained his injuries, and that Vargas was not permitted to be in the stairway.  (Def. Opp. 14).  As such, the accident cannot be considered as arising out of AFR's ongoing operations at the covered location.

But once again, Defendant's extrinsic evidence bears on the possible liability of the defendants in the underlying case, and thus bears on the underlying merits.  For example, if Vargas was entirely outside the scope of his work on the Project when he was in the stairwell and was instructed to not use the stairwell — as Defendant appears to contend — he may not be able to recover against Plaintiff and the other defendants in the underlying case. Moreover, as above, the underlying parties are litigating whether Vargas was permitted to be in the stairwell, again in the context of indemnity-related disputes.  (*See, e.g.*, Hess Decl., Ex. A at ¶ 31 (Plaintiff arguing that Vargas "was instructed by the … Magen supervisor to use a stairwell … off limits to all contractors").  There is nothing collateral about these matters, and until they are resolved Defendant cannot rely on related evidence to defeat the duty to defend.

Defendant's cases in support of its argument that this extrinsic evidence defeats its duty to defend are inapposite.  For example, in *Northville Industries Corporation* v. *National Union Fire Insurance Company of Pittsburgh, Pa.*, the New York Court of Appeals found that the insured's motion papers in the underlying case confirmed that a "sudden and accidental exception" in the policies' pollution exclusion did not apply, and thus the insurers owed no duty to defend.  89 N.Y.2d 621, 635 (1997).  However, the Court of Appeals only resorted to such evidence because the underlying complaints did not trigger the policies in the first instance, and the Court confirmed this lack of coverage through an examination of extrinsic evidence.  *See id.* ("There is an absence of any allegations in the underlying complaints from which any claim of an abrupt, environmentally significant discharge of pollutants could be inferred."). Not so here, as the underlying 622 Complaint triggers the duty to defend.  This analysis is in line with New York courts' resort to extrinsic evidence to *trigger* a duty to defend, rather than to *defeat* it.  *See, e.g., Fitzpatrick*, 78 N.Y.2d at 66 ("[W]here the insurer is attempting to shield itself from the responsibility to defend despite its actual knowledge that the lawsuit involves a covered event, wooden application of the 'four corners of the complaint' rule would render the duty to defend narrower than the duty to indemnify — clearly an unacceptable result."); *Quaco* v. *Liberty Ins. Underwriters Inc.*, No. 17 Civ. 7980 (RJS), 2018 WL 4572249, at *5 (S.D.N.Y. Sept. 23, 2018) ("Here, [the insurer] is attempting to reach beyond the allegations in the underlying complaint which clearly compel coverage to dredge up facts that might help it escape coverage liability.

Not surprisingly, courts applying New York law have rejected such attempts to
convert *Fitzpatrick* from a shield for the insured into a sword for the insurer."
(internal citation omitted)), *judgment entered*, No. 17 Civ. 7980 (RJS), 2018 WL
6528233 (S.D.N.Y. Sept. 28, 2018).[9]

In sum, whether AFR (and by implication JK and Vargas) were working
for and at the behest of Plaintiff, and whether the stairwell where Vargas
sustained his injuries was connected to the ongoing operations at the project
location or whether Vargas was permitted to be there, are "integral to the
claims against … defendants in" the underlying case.  *Stoncor Grp., Inc.* v.
*Peerless Ins. Co.*, No. 16 Civ. 4574 (LAK), 2022 WL 3701640, at *7 (S.D.N.Y.
Aug. 26, 2022).  Indeed, the underlying parties are continuing to litigate
precisely those issues.  It would create perverse incentives for this Court to
allow Defendant to benefit from Plaintiff's vigorous defense of itself and its
attempts to seek contractual indemnity from other parties or otherwise
extricate itself from the underlying case.  *See, e.g.*, *Int'l Bus. Machines Corp.*,
303 F.3d at 426-27 ("We doubt that New York courts would reward [insurer] by
considering extrinsic evidence flushed out as a result of its unwillingness to
take a position regarding the [underlying] claim for over three years.").

---

[9]     Defendant's other cases are entirely irrelevant, inasmuch as they relate to contractual
privity issues.  *See, e.g.*, *Kel-Mar Designs, Inc.* v. *Harleysville Ins. Co. of N.Y.*, 8 N.Y.S.3d
304, 305 (1st Dep't 2015) (finding no additional insured coverage or duty to defend
certain entities because named insured "did not perform operations for them *pursuant
to a written contract*" (emphasis added)); *Structure Tone, Inc.* v. *Nat. Cas. Co.*, 13
N.Y.S.3d 52, 53 (1st Dep't 2015) ("Because project owner … did not contract directly
with electrical contractors …, the named insured on National Casualty's policy, the
motion court properly found that [project owner] did not qualify as an additional
insured.").

Instead, Defendant's remedy for terminating the duty to defend that it owes to Plaintiff is not to seek this Court's resolution of the merits of the underlying case, but to defend Plaintiff until Defendant proves — if it can — facts showing that Plaintiff has no possible claim for indemnification.  *See, e.g.*, *Liberty Mut. Ins. Co.*, 2017 WL 4386363 at *15 ("When an insurer believes that undisputed facts relevant to the merits of the underlying action prove that the alleged injuries do not fall within the indemnification provisions, then its recourse is not to seek a declaratory judgment that it has no duty to defend. Instead, it must defend the action and seek to prove, in that action, the existence of the facts — at which point, it may withdraw its defense.") (finding insurer could not defeat duty to defend because factual questions, including whether Port Authority had ongoing operations near relevant accidents and whether those operations contributed to a different accident, "are questions relevant to the merits of the underlying actions"); *Image By J & K, LLC*, 335 F. Supp. 3d at 332 (finding that court could not consider extrinsic evidence purportedly showing that underlying plaintiff or other defendant was solely at fault for accident, as such evidence bore on whether named insured could "be held liable in the underlying action").

### 3. The Court Cannot Resolve the Priority of Coverage Among the Relevant Policies as a Matter of Law

In a separate battle of the insurers, Defendants and Cross-Claimants Travelers and Hartford have joined in Plaintiff's motion against Harleysville, and seek certain relief.  Travelers joins in Plaintiff's motion against Harleysville, and has moved for summary judgment with respect to its cross-claim against

Harleysville.  (*See* Dkt. #58 (Travelers's letter noting that it joins in Plaintiff's motion, and moving for summary judgment with respect to its cross-claim against Harleysville); Dkt. #31 (Travelers's answer and cross-claim, alleging that any coverage under the Travelers policy is excess over any other coverage Plaintiff is entitled as an additional insured)).  Likewise, Hartford has joined in Plaintiff's motion against Harleysville, and has also moved for summary judgment with respect to its cross-claim against Harleysville.  (*See* Hartford Br. (noting that Hartford joins in Plaintiff's motion and moves for summary judgment with respect to its cross-claim against Harleysville); Dkt. #30 (Hartford's answer and cross-claim, alleging that any coverage from Harleysville's policy is primary to the Hartford policy)).  In its answer, Harleysville also brought cross-claims against Travelers and Hartford, and pleaded that "such coverage as may be afforded by [Harleysville] is excess to or co-insurance with such other valid and collectible insurance as may exist[.]" (Dkt. #24).

Circumstances have changed since Defendants and Cross-Claimants Hartford and Travelers first filed their answers and cross-claims.  Hartford has clarified that it is participating in Plaintiff's defense in the underlying case (Hartford Br. 3 n.3), and now argues that Harleysville is obligated to jointly defend Plaintiff alongside Hartford and Travelers (*id.* at 3; *see also id.* at 2 n.2 (noting that Travelers concedes that it owes a defense to Plaintiff, and seeks summary judgment on Harleysville's obligation to participate in Plaintiff's defense)).  Having fully joined in Plaintiff's motion against Harleysville and

acquiescing to the representations in Hartford's letter, Travelers also appears to adopt this stance as well.  (*See* Dkt. #58; *see also* Dkt. #59 (transcript of post-fact-discovery conference, in which Travelers noted that it would advise Plaintiff of its position on its duty to defend in order to clarify whether Plaintiff would need to file a motion for summary judgment against Travelers)).  As such, both Hartford and Travelers appear to concede that they owe a duty to defend Plaintiff as an additional insured under their policies, and the only issue pertains to whether all Defendants must defend on a co-primary basis.  Harleysville only briefly addressed Hartford's and Travelers's motions and joinders, arguing that because its additional insured provision precludes coverage to Plaintiff, "Harleysville has no obligation to provide any contribution for the defense and indemnification of [Plaintiff] to any of the insurers that do provide coverage to [Plaintiff] in connection with this claim."  (Def. Opp. 3).

However, on November 28, 2022, this Court ordered Hartford and Travelers to provide it with full copies of their policies, as both parties previously relied on excerpts of their policies to make their arguments.  (Dkt. #70).  In that Order, the Court noted that it would permit Harleysville to file a brief letter response.  (*Id.*).  Harleysville provided such response, and argued that its Policy's "other insurance" language is distinct from the Travelers and Hartford language, such that the Harleysville policy "should be deemed excess" in the event the Court finds Plaintiff to be an additional insured.  (Dkt. #73 at 3).  The Court now has a fuller record to consider priority of coverage arguments.

Hartford's policy provides that "[t]his insurance is primary except when Paragraph b. below applies." (Dkt. #71 § IV.4.a.).  The relevant subsection of Paragraph b. states:

> This insurance is excess over ... [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operation, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(*Id.* § IV.4.b(1)(b); Hartford Br. 3).  The Hartford policy further clarifies that "[w]hen this insurance is excess, we will have no duty ... to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit.'" (*Id.* § IV.4(2)).

Travelers's policy is similar to Hartford's.  It states that "[t]his insurance is primary except when b. below applies." (Dkt. #72 § I.4.a.).  Paragraph b. provides:

> This insurance is excess over ... [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement

(*Id.* § I.4.b(2); *see also* Dkt. #31).  And just like Hartford's policy, Travelers's policy states that "[w]hen this insurance is excess, we will have no duty ... to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit.'" (*Id.* § I.4.).

Finally, Harleysville's Policy provides:

> If specifically required by a written contract or agreement, any coverage provided by this endorsement to an additional insured shall be primary and any other

> valid and collectible insurance available to the additional insured shall be non-contributory with this insurance.  In the absence of a written contract or if the written contract does not require this coverage to be primary and the additional coverage to be noncontributory, then this insurance will be excess over any other valid and collectible insurance available to the additional insured.

(Def. 56.1 ¶ 21; Pl. 56.1 ¶ 21).  The Policy continues:

> Even if the requirements of paragraph 1 are met establishing this coverage as primary and the additional insured's coverage as being non-contributory, this coverage will be excess over any other insurance available to the additional insured which is conferred onto said person or organization by a separate additional insured endorsement.

(*Id.*).  Hartford argues that, because its policy contains an excess "other insurance" provision and Harleysville's Policy contains the same, the two provisions "cancel each other out, and both policies apply."  (Hartford Br. 2).  Travelers, on the other hand, makes no legal or policy language arguments in support of its motion.  (*See* Dkt. #58).

"In insurance contracts the term 'other insurance' describes a situation where two or more insurance policies cover the same risk in the name of, or for the benefit of, the same person."  *Great N. Ins. Co.* v. *Mount Vernon Fire Ins. Co.*, 92 N.Y.2d 682, 686-87 (1999).  "If the two policies contain irreconcilable 'other insurance' clauses, the clauses 'cancel each other out and the companies must apportion the costs of defending and indemnifying ... on a *pro rata* basis.'"  *Kookmin*, 2019 WL 1059973, at *8 (quoting *Great N. Ins. Co.*, 92 N.Y.2d at 687).  However, if "the policies contain reconcilable 'other insurance' clauses, the

Court must enforce coverage priority pursuant to the terms of the insurance policies.  In that case, the primary policy must pay up to the limits of its coverage before the secondary coverage becomes effective."  *Id.* (citing *Great N. Ins. Co.*, 92 N.Y.2d at 687).

All of the policies have the same coverage grant for damages because of "bodily injury," and Defendants all cover Plaintiff as an additional insured. (*See, e.g.*, Dkt. # 71 (Hartford policy) Additional Insured Endorsement (additional insured coverage for "bodily injury" "caused, in whole or in part, by your acts or omissions … [in] the performance of your ongoing operations"); *id.* § I.1 ("We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury[.]'"); Dkt. #72 (Travelers policy) Additional Insured Endorsement (additional insured coverage "with respect to liability caused by 'your work' for the additional insured"); *id.* § I.1 ("We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury[.]'"); Kraus Decl., Ex. 17 (Harleysville Policy) § I.1.a ("We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.")).

However, the policies differ in one important respect: the "other insurance" provisions.  As noted above, the Hartford and Travelers policies specifically note that their coverage will be primary *except* when "[a]ny other primary insurance [is] available to you[.]"  (*See, e.g.*, Dkt. #71 §§ IV.4.a., IV.4.b(1)(b)).  The Harleysville Policy, on the other hand, states that its coverage

40

will be primary "[i]f specifically required by a written contract or agreement[.]"
(Def. 56.1 ¶ 21; Pl. 56.1 ¶ 21).  It then continues: "[i]n the absence of a written
contract or if the written contract does not require this coverage to be
primary … then this insurance will be excess over any other valid and
collectible insurance available to the additional insured." (*Id.*).  The Second
Department analyzed such a scenario in *Poalacin* v. *Mall Properties, Inc.*, 64
N.Y.S.3d 310 (2d Dep't 2017).  In that case, additional insureds argued that
Harleysville owed them a duty to defend on a primary basis under a policy
issued to a subcontractor.  *Id.* at 320-21.  Harleysville argued that a different
insurance policy issued by another insurer to the additional insureds'
contractor was primary.  *Id.*  The court found that the Harleysville policy was
excess, explaining:

> The Harleysville policy provides that coverage under the
> additional insured endorsement shall be excess over
> any other available insurance unless the underlying
> written contract between [subcontractor] and
> [contractor] requires such additional insured coverage
> to be primary.  The relevant contract between
> [subcontractor] and [contractor] does not specifically
> require [subcontractor] to procure primary insurance
> covering [contractor] as an additional insured. The
> [other insurance] policy issued to [contractor], in turn,
> provides primary coverage except that such coverage
> shall be excess over any other primary insurance
> available under an additional insured provision of
> another policy.  Accordingly … the policy of insurance
> issued by Harleysville is excess to the policy of
> insurance issued by [the other insurer].

*Id.*

Harleysville contends that *Poalacin* conclusively demonstrates that its Policy is excess to the Travelers and Hartford policies, because "[t]he relevant contract, the Purchasing Agreement between Interpublic and AFR, contains no … requirement" that the Harleysville Policy apply on a primary basis.  (Dkt. #73 at 2).  But this argument has its own issues.  For one, Harleysville cites to Exhibit 11 of the Kraus Declaration submitted in support of Plaintiff's motion for partial summary judgment, and states that this exhibit is the aforementioned purchasing agreement bearing on the coverage Harleysville must provide.  (*Id.*).  Not so.  Exhibit 11, as noted in the Kraus Declaration, is a "work order" issued by AFR to JK, its subcontractor.  (Kraus Decl. ¶ 13).  Exhibit 11 shows nothing more than a single snapshot of the relationship between AFR and JK, and is dated December 5, 2013.  (*Id.*, Ex. 11).  And there is no reason why this single work order would capture the relevant information pertaining to the coverage AFR was required to provide to Plaintiff.  *See, e.g.*, *Johnson* v. *Atl. Cas. Ins. Co.*, No. 13 Civ. 1002 (WMS), 2015 WL 5021953, at *1 (W.D.N.Y. Aug. 24, 2015) (considering contract between two contractors that included an indemnification clause, as well as a contractual provision requiring one contractor to provide other with additional insured coverage).  Indeed, the work order says *nothing* about insurance.

In any event, it is unclear why the relevant contract would be between AFR and Interpublic or JK, rather than between AFR and Plaintiff or Magen.  *See Poalacin*, 64 N.Y.S.3d at 320-21 (relevant contract was between named insured subcontractor and additional insured contractor).  To this point,

42

Plaintiff submitted a certificate of insurance between it and AFR, dated June 14, 2013, some six months before the AFR work order.  (Kraus Decl., Ex. 10).  That certificate of insurance shows that Harleysville provided insurance to AFR, and that Plaintiff was listed as an additional insured.  (*Id.*).  Presumably, then, the operative contract pre-dates this certificate of insurance, and the operative contract required that AFR name Plaintiff as an additional insured before proceeding with work.  (*See id.* ("Notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies.")).

Accordingly, Harleysville has not provided the Court with the operative contract.  Of course, it is possible that there is no such contract, in which case the Harleysville Policy states that it will apply on an excess basis.  (Def. 56.1 ¶ 21; Pl. 56.1 ¶ 21).  But Harleysville has not argued as much in its papers, nor has it put forth any evidence that this is the case.  Instead, it has pointed the Court to a work order that does not shed any light on the instant dispute.  Because of the specific language in the Harleysville Policy, and the manner in which such language has been interpreted vis-à-vis the other insurance provisions in the Travelers and Hartford policies, the Court must deny Traveler's and Hartford's cross-motions for summary judgment on their cross-claims against Harleysville, and finds that a genuine dispute of material fact exists regarding whether Harleysville's Policy provides coverage on a co-primary

43

basis or on an excess basis.  Likewise, the Court will not *sua sponte* grant Harleysville relief on its cross-claims against Travelers and Hartford.

### CONCLUSION

For the reasons set forth in this Opinion, the Court GRANTS Plaintiff's motion for partial summary judgment, and DENIES Cross-Claimants Travelers's and Hartford's cross-motions for summary judgment.  The Clerk of Court is directed to terminate the pending motion at docket entry 50.  By **January 6, 2023**, the parties shall submit to the Court a joint letter proposing next steps in this case.

SO ORDERED.

Dated:      December 16, 2022
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge